**From:** Jason Leopold [mailto:jasonleopold@gmail.com]
**Sent:** Friday, April 08, 2016 3:41 PM
**To:** FOIPARequest <FOIPARequest@ic.fbi.gov>
**Subject:** Request for records under the Freedom of Information Act

This is a request for records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 and the Privacy Act, 5 U.S.C. § 552a. This request should be considered under both statutes to maximize the release of records. This request seeks expedited processing.

REQUESTER INFORMATION

Name: Jason Leopold

Position: Investigative Reporter

Address: 1669 Benedict Canyon Dr., Beverly Hills, CA 90210

Email: jasonleopold@gmail.com

RECORDS SOUGHT

I request disclosure of the FBI's case files as well as any and all records that were prepared, received, transmitted, collected and/or maintained by the FBI, the Terrorist Screening Center, the National Joint Terrorism Task Force, or any Joint Terrorism Task Force relating or referring to Mikhail Lesin, a former aide to Russian President Vladimir Putin who served as Russia's Minister for Communications and Mass Media between 1999 and 2004, and who was found dead in his hotel room in Washington, DC in November 2015. The cause of death was blunt force trauma. Mr. Lesin's death was reported by numerous media outlets including NBC News: http://www.nbcnews.com/news/world/mikhail-lesin-ex-putin-aide-died-blunt-force-trauma-washington-n536456

The records I seek will be used by me to write a story about Mr. Lesin to be published on VICE News, where I work as an investigative reporter.

**Please ensure searches for responsive records includes a search of all field offices and all records systems identified in this request. I request cross-reference, ELSUR and CRS searches.**

PLEASE READ THE INSTRUCTIONS ON THE SEARCH

INSTRUCTIONS REGARDING SEARCH

1) Request for FBI Headquarters, ALL Field Offices, Task Force Offices, and other Offices Searches:

Notwithstanding the fact that the FBI may have the ability to search certain records centrally that previously could only be searched by the field offices, I request that complete and thorough searches for any and all records relating or referring to the subjects of my requests be conducted in any and all indices, filing systems, and locations maintained by FBI headquarters, any and all FBI field offices and/or resident agencies, and any and all FBI and/or Joint task force offices.

The search should include, but not be limited to, the following offices, divisions, branches, and locations:

EXHIBIT A

Director, Chief of Staff, Deputy Director, Special Agents in Charge (SACs), the Office of Public Affairs, the Office of Congressional Affairs, the Office of the General Counsel, the Office of Equal Employment Opportunity, the Office of Professional Responsibility, the Office of the Ombudsman, the Office of Integrity and Compliance, Executive Assistant Director for National Security Branch/Associate Executive, Assistant Director for National Security Branch, Counterterrorism Division, Counterintelligence Division, Directorate of Intelligence, Weapons of Mass Destruction Directorate, Executive Assistant Director for Criminal, Cyber, Response, and Services Branch Criminal Investigative Division, Cyber Division, Critical Incident Response Group, International Operations Division, Office of Law Enforcement Coordination, Executive Assistant Director for Science and Technology Branch, Operational Technology Division, Laboratory Division, Criminal Justice Information Services Division, Associate Deputy Director, Resource Planning Office, Inspection Division, Facilities and Logistics Services Division, Finance Division, Records Management Division, Security Division, Executive Assistant Director for Information and Technology Branch, IT Management Division, IT Engineering Division, IT Services Division, Executive Assistant Director for Human Resources Branch, Training and Development Division, and Human Resources Division.

2) Request for Main File and Cross-Reference Searches:

I request that a search of all main file and cross-reference indices, filing systems, and locations be conducted for any and all records relating or referring to the subject of my requests.

3) Instructions Regarding "Records":

For both main file and cross-reference searches, my requests includes, but are not limited to, documents; reports; memoranda; letters; electronic files; "See Also" files; "Do Not File" files; "Official & Confidential" files; Nichols files; W. Mark Felt Files; Interesting Case write-ups; FBI Budget Records; numbered and lettered subfiles; 1A envelopes; 1C bulky evidence; routing slips; enclosures behind files (EBF's); "Personal & Confidential" files; restricted files; photographs, audio tapes & videotapes; "JUNE" files; "Obscene" Files; "Subversive" Indexes; Bulky Exhibits; control files; mail covers; trash covers; zero files; double zero files; Weekly Press Summary File; Monthly Administrative Reports; prosecutive report; nonprosecutive summary; investigative reports; negative results of investigation; Five-Year Reinvestigation; Public Financial Disclosure Reports; newspaper clippings; misconduct investigations; News Releases; Photostats; Originating Agency Identifier File; interview notes; investigative notes; FD-302s; National Periodical Summary File; Letterhead Memorandum (LHM); blind Memorandum; office Memorandum; SAC Memorandum; Media Matters Statistical Collection Form; Manuals; logs; job postings; administrative data; Law Enforcement Bulletin; Special Surveillance Group Daily Worksheet; Accomplishment Reports; cumulative/comparative reports; dead files; contracts; noninvestigative files; legal files; Legat files; office of origin files; OPR records; Recreation Association records; cryptomaterials; recording of outside contacts; consensual monitoring transcriptions; inquiries from members of Congress; confidential source material; letters from chronic letter writers; and any index citations relating to the subjects of my requests or referencing the subjects of my requests ("see also") in other files.

When processing these requests, please note the D.C. Circuit has previously held that agencies have a duty to construe the subject material of FOIA requests liberally to ensure responsive records are not overlooked. See Nation Magazine, Washington Bureau v. U.S. Customs Service, 71 F.3d 885, 890 (D.C. Cir. 1995). Accordingly, you are hereby instructed that the term "record" includes, but is not limited to: 1) all email communications to or from any individual within your agency; 2) memoranda; 3) inter-agency communications; 4) sound recordings; 5) tape recordings; 6) video or film recordings; 7) photographs; 8) notes; 9) notebooks; 10) indices; 11) jottings; 12) message slips; 13) letters or correspondence; 14) telexes; 15) telegrams; 16) facsimile transmissions; 17) statements; 18) policies; 19) manuals or binders; 20) books; 21) handbooks; 22) business records; 23) personnel records; 24) ledgers; 25) notices; 26) warnings; 27) affidavits; 28) declarations under penalty of perjury; 29) unsworn statements; 30) reports; 31) diaries; or 32) calendars, regardless of whether they are handwritten, printed, typed, mechanically or electronically recorded or reproduced on any medium capable of conveying an image, such as paper, CDs, DVDs, or diskettes.

Furthermore, in line with the guidance issued by the Department of Justice ("DOJ") on 9 September 2008 to all federal agencies with records subject to FOIA, agency records that are currently in the possession of a U.S. Government contractor for purposes of records management remain subject to FOIA. Please ensure that your searches comply with this clarification on the effect of Section 9 of the OPEN Government Act of 2007 of the definition of a "record" for purposes of FOIA.

In addition, the FBI should not interpret this request to exclude records sent to outside third parties, nor should the FBI interpret this request to exclude records originating with outside third parties.

4) Instructions Regarding "Leads":

As required by the relevant case law, the FBI is required to follow any leads it discovers during the conduct of its searches and perform additional searches when said leads indicate that records may be located in another FBI system. Failure to

follow clear leads is a violation of FOIA.

5) Request for Searches for FOI/PA Records, 197 Files, and (-0, -2, -5) Control Files:

For both main file and cross-reference searches, I request searches for records relating or referring to Freedom of Information and/or Privacy Act's requests submitted by, on behalf of, or about the subjects of my requests. My requests include, but are not limited to, searches of 190 files, indices of responses to previous FOI/PA requests, 197 Files, and (-0, -2, -5) Control Files. Therefore, please ensure searches are conducted of the FOIA Data Processing System (FDPS) and Request Tracking System (RTS). If any FOIA/Privacy Act requests are found which were submitted by, on behalf of, or about the subjects of my requests, I also request any and all processing notes, search slips, and any other records generated in the course of perfecting, locating, responding to, or otherwise processing the requests.

6) Request for Text Searches of the ECF:

For both main file and cross-reference searches, I request that text searches of the ECF (Electronic Case File) be conducted. I also request text searches of any other system, databases, and indices that can be text searched.

7) Request for ELSUR, MISUR, and FISUR Searches:

For both main file and cross-reference searches, I request that searches of all electronic, microphone, and physical surveillance indices, filing systems, and locations for any and all records relating or referring to the subject of my request be conducted. These searches should include, but not be limited to, searches for "overhears."

8) Request for Searches of Indices:

I request that searches include, but not be limited to, the following indices: General index; Administrative Index (ADEX); Agitator Index; Alternate Offices Indices; Anonymous Letter File; Associates of Drug Enforcement Class I Narcotics Violators; Background Investigation Index – Department of Justice; Background Investigation Index – White House, Other Executive Agencies, and Congress; Background Investigation Index – Department of Energy; Bank Fraud and Embezzlement Index; Bank Robbery Albums; Bank Robbery Nickname Index; Bank Robbery Note File; Bank Robbery Suspect Index; Black Panther Party Photo Index; Black United Front Index; Car Ring Case Photo Albums; Car Ring Case Photo Album and Index; Car Ring Case Toll-Call Index, Car Ring Theft Working Index; Cartage Albums; Channelizing Index; Check Circular File; Computerized Telephone Number File Intelligence; Con Man Index; Confidence Game (Flimflam) Albums; Copyright Matters Index; Criminal Intelligence Index; Criminal Informant Index; Drug Enforcement Agency (DA) Class I Narcotics Violators Listing; Deserter Index; ELSUR Index; Evidence Control Index; Extremist Informant Index; Extremist Photo Albums; False Identities Index; False Identities Program List; False Identity Photo Albums; FBI/Inspector General Case Pointer System; FBI Wanted Persons Index; Foreign Counterintelligence (FCI) Asset Index; Foreign Police Cooperation Index; Fraud against the Government Index; Fugitive Bank Robbers File; General Security Index; Hoodlum License Plate Index; Identification Order Fugitive Flier File; Informant Index; Index of Informants in Other Field Offices; Interstate Transportation of Stolen Aircraft Photo Album; Internal Revenue Service (IRS) Wanted List; Key Activist Program Albums; Key Extremist Program Listing; Kidnapping Book; Known Check Passers Album; Known Gambler Index; La Cosa Nostra (LCN) Membership Index; Leased Line Letter Request Index; Mail Cover Index; Mail Cover Statistics Index; Military Deserter Index; National Bank Robbery Albums; National Fraudulent Check File; National Security Electronic Surveillance (ELSUR) Card File; National Security Electronic Surveillance File; Night Depository Trap Index; Organized Crime Photo Albums; Photospread Identification Elimination File; Prostitute Photo Albums; Rabble-Rouser Index; Reserve Index; Royal Canadian Mounted Police (RCMP) Wanted Circular File; Security Index; Security Informant Index; Security Subjects Control Index; Security Telephone Number Index; Selective Service Violators Index; Skyjack Fugitive Albums; Sources of Information Index; Special Services Index; Stolen Checks and Fraud-by-Wire Index; Stop Notices Index; Surveillance Locator Index; Symbionese Liberation Army (SLA) Index; Telephone Number Index – Gamblers; Telephone Subscribers and Toll Record Check Index; Thieves, Couriers, and Fences Photo Index; Toll Records Request Index; Top Burglar Albums; Top Echelon Criminal Informant Program Index; Top Ten Program File; Top Their Program Index; Truck Hijack Photo Albums; Truck Thief Suspect Photo Album; Traveling Criminal Photo Album; Veterans Administration (VA)/Federal Housing Administration (FHA) Matters Index; Wanted Fliers File; Weathermen Photo Album; Wheeldex; White House Special Index; Witness Protection Program Index; and Wounded Knee Album.

9) Request for Searches of Laboratory Records:

For both main file and cross-reference searches, I request that searches of all laboratory indices, filing systems, and locations for any and all records relating or referring to the subject of my request be conducted. My request includes, but is not limited to, searches for laboratory records.

10) Request for Confidential Searches:

For both main file and cross-reference searches, I request that searches of all confidential indices, filing systems, and locations for any and all records relating or referring to the subject of my request be conducted.

11) Request for Searches of Seized Asset Information:

For both main file and cross-reference searches, I request that searches of any and all records systems and indices pertaining to seized asset information for any and all records relating or referring to the subject of my request be conducted.

12) Request for Searches of the FBI's "Bureau Mailing Lists" records system:

For both main file and cross-reference searches, I request that searches of the FBI's "Bureau Mailing lists" records system for any and all records relating or referring to the subject of my request be conducted.

13) Request for Searches of the "Special File Room":

For both main file and cross-reference searches, I request that searches of the "Special File Room" for any and all records relating or referring to the subject of my request be conducted.

14) Request for Computer, Intranet, and Internal Network Searches:

For both main file and cross-reference searches, please search all systems of records that are available to the FBI through any computer, InterCommunication Intranet or any other intranet or internal U.S. government or FBI network.  Your searches of intranet and internal network systems of records should include, but not be limited to: Bureaupedia, Intellipedia, and any wiki to which the FBI has access; Field Office Management System (FOIMS); National Information Sharing Strategy (NISS) and its components, the Law Enforcement Online (LEO), Law Enforcement National Data Exchange (N-DEx), and OneDOJ; the FBI's Records/Information Dissemination Section (RIDS) and Work Process Unit (WPU) SharePoint sites , any other SharePoint sites available to the FBI; eChirp ; Subject Matter Expert (SME) pages; NCTC Online; FBI Top Secret/Sensitive Compartmented Information Operational Network (SCION); FBI Data Integration and Visualization System (DIVS); Delta; FISAMS; DWS/EDMS; Data Loading and Analysis System (DaLAS); Telephone Application; Clearwater; Investigative Data Warehouse; Guardian/eGuardian; Sentinel; Automated Case Support (ACS) Universal Index; ACS Electronic Case File; and ACS Investigative Case Management.

15) Request for Training Manuals Searches:

For both main file and cross-reference searches, please search all training materials, including but not limited to material used at, or in the possession of, the FBI's Quantico training facility, the National Executive Institute, Executive Development Institute (EDI), Law Enforcement Executive Development Seminar (LEEDS), International Law Enforcement Academy, and the FBI's Virtual Academy.

16) Request for Intelligence Products Searches:

For both main file and cross-reference searches, please search all FBI intelligence products, including but not limited to, Intelligence Information Reports (IIRs), Intelligence Bulletins, Situational Intelligence Reports, Assessments, Emerging Trend Reports, monthly (or otherwise periodic) emails from the Threat Monitoring Unit (TMU) to field offices, and Intelligence Briefings.  Please also search all non-FBI intelligence products that are in the possession of the FBI or to which the FBI has access, including but not limited to, the Threat Matrix.

17) Request for NCIC Searches:

For both main file and cross-reference searches, please search all NCIC files, including but not limited to: Article File; Gun File; Boat File; Securities File; Vehicle File; Vehicle and Boat Parts File; License Plate File; Missing Persons File; Foreign Fugitive File; Identity Theft File; Immigration Violator File; Protection Order File; Supervised Release File; Unidentified Persons File; U.S. Secret Service Protective File; Gang File; Known or Appropriately Suspected Terrorist File; Wanted Persons File.

18) Request for Affiliated Searches:

For both main file and cross-reference searches, please search records of any offices or components through which the FBI collaborates, trains, or otherwise works with non-governmental entities, including but not limited to the Domestic Security Alliance Council, the Business Alliance, Infragard, Academic Alliance, and FBI Citizen's Academy.

19) Request for Downgraded and Obsolete Systems Searches:

For both main file and cross-reference searches, please search systems of records which are still in existence but have had their funding eliminated, have been downgraded, or are considered obsolete.

20) Instructions regarding Federated Searches:

If you perform any federated searches (i.e., a search across multiple databases), please ensure that the user performing the searches has access to all the content of all the databases searched.

21) Instructions regarding Drives and Storage Media:

For both main file and cross-reference searches, your searches should include, but not be limited to, files stored locally on individual computers (all drives); on remote-access drives assigned to individual users; shared drives; removable media and storage drives; and mobile computing equipment, such as temporarily assigned laptops and smart devices.

22) Request for Email Searches:

For both main file and cross-reference searches, your searches should include but not be limited to a search for emails. In searching emails, please search personal email accounts of all employees and former employees who may have sent or received emails regarding the subject matter of these request as well as institutional, public, shared, group, duty, task force, and all other joint and/or multi-user email accounts which may have been utilized by each such employee or former employee. Additionally, for each relevant email account identified, all storage areas must be searched, including the inbox folder and sub-folders, sent folder, deleted folder, and any archives. Your searches for emails should include Outlook, GroupWise, and Exchange, as well as any other email system.

23) Request for Searches of CORE, PRISM, BLARNEY, Upstream, and Fairview:

I request that the FBI search the CORE, PRISM, BLARNEY, Upstream, and Fairview systems for records relating or referring to the subjects of my requests.

24) Request for Searches for CART Records:

I request that the FBI search CART notes, reports, and other records relating or referring to the subjects of my requests.

25) Request for Additional Filing Systems, Indices, and Locations Searches:

Indeed, for both main file and cross-reference searches, please search all of your paper and manual indices, filing systems, and locations, including those I have not specified by name and those of which I may not be aware.

26) Instructions regarding Photographs and other Visual Materials:

I request that any photographs or other visual materials responsive to my requests be released to me in their original or comparable forms, quality, and resolution. For example, if a photograph was taken digitally, or if the FBI maintains a photograph digitally, I request disclosure of the original digital image file, not a reduced resolution version of that image file nor a printout and scan of that image file. Likewise, if a photograph was originally taken as a color photograph, I request disclosure of that photograph as a color image, not a black and white image. Please contact me for any clarification on this point.

27) Request for Ticklers:

For both main file and cross-reference searches, I request that searches for any and all "ticklers" relating or referring to the subjects of my requests be conducted.

28) Request for Duplicate Pages:

I request disclosure of any and all supposedly "duplicate" pages. Scholars analyze records not only for the information available on any given page, but also for the relationships between that information and information on pages surrounding it. As such, though certain pages may have been previously released to me, the existence of those pages within new context renders them functionally new pages. As such, the only way to properly analyze released information is to analyze that information within its proper context. Therefore, I request disclosure of all "duplicate" pages.

29) Instructions regarding Scope and Breadth of Requests:

Please interpret the scope of the here-enclosed requests broadly. The FBI is instructed to interpret the scope of these requests in the most liberal manner possible short of an interpretation that would lead to a conclusion that the requests do not reasonably describe the records sought.

30) Instructions regarding Previously Processed Files:

The here-enclosed FOIPA requests are for new complete and thorough searches for any and all records relating or referring to the subjects of my requests. The release of previously processed records or files will not satisfy the here-enclosed requests.

31) Regarding Destroyed Records:

If any records responsive or potentially responsive to my requests have been destroyed, my requests include, but are not limited to, any and all records relating or referring to the destruction of those records. This includes, but is not limited to, any and all records relating or referring to the events leading to the destruction of those records.

32) Request for Searches of Open Source Material and Records Transferred to Outside Entities:

I request that in conducting its searches, the FBI process and disclose responsive records even if the FBI considers those records to be open source. This includes but is not limited to, searches of/for records transferred by the FBI to entities outside the FBI, including but not limited to the National Archives and Records Administration (NARA).

33) Format:

I request that any releases stemming from the here-enclosed requests be provided to me in digital format (soft-copy) on a compact disk or other like media.

34) Additionally:

Please produce all records with administrative markings and pagination included.

Please place any "missing" files pertaining to this request on "special locate" and advise me that you have done this.

Please send a memo (copy to me) to the appropriate units in your office to assure that no records related to this request are destroyed.

35) Exemptions and Segregability:

I call your attention to President Obama's 21 January 2009 Memorandum

concerning the Freedom of Information Act, in which he states:

All agencies should adopt a presumption in favor of disclosure, in order to renew their commitment to the principles embodied in FOIA [....] The presumption of disclosure should be applied to all decisions involving FOIA.

In the same Memorandum, President Obama added that government information should not be kept confidential "merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears."

Finally, President Obama ordered that "The Freedom of Information Act should be administered with a clear presumption: In the case of doubt, openness prevails."

Nonetheless, if any responsive record or portion thereof is claimed to be exempt from production, FOIA/PA statutes provide that even if some of the requested material is properly exempt from mandatory disclosure, all segregable portions must be released. If documents are denied in part or in whole, please specify which exemption(s) is (are) claimed for each passage or whole document denied. Please provide a complete itemized inventory and a detailed factual justification of total or partial denial of documents. Specify the number of pages in each document and the total number of pages pertaining to this request. For "classified" material denied, please include the following information: the classification (confidential, secret or top secret); identity of the classifier; date or event for automatic declassification or classification review or downgrading; if applicable, identity of official authorizing extension of automatic declassification or review past six years; and, if applicable, the reason for extended classification beyond six years.

In excising material, please "black out" the material rather than "white out" or "cut out." I expect, as provided by FOIA, that the remaining non-exempt portions of documents will be released.

Please release all pages regardless of the extent of excising, even if all that remains are the stationery headings or administrative markings.

In addition, I ask that your agency exercise its discretion to release records which may be technically exempt, but where withholding serves no important public interest.

FEE CATEGORY AND REQUEST FOR A FEE WAIVER

I am an investigative reporter for VICE News covering a wide-range of issues, including Guantanamo, national security, counterterrorism, civil liberties, human rights, and open government. Additionally, my reporting has been published in the The Guardian, The Wall Street Journal, The Financial Times, Salon, CBS Marketwatch, The Los Angeles Times, The Nation, Truthout, Al Jazeera English and Al Jazeera America.

I am willing to pay any reasonable expenses associated with this request, however, as the purpose of the requested disclosure is in full conformity with the statutory requirements for a waiver of fees, I formally request such a waiver. I request a waiver of all costs pursuant to 5 U.S.C. §552(a)(4)(A)(iii) ("Documents shall be furnished without any charge ... if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."). Disclosure in this case meets the statutory criteria, and a fee waiver would fulfill Congress's legislative intent in amending FOIA. See Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requesters.'"). I incorporate by reference the explanation and attached materials in the above sections which demonstrates why the requested information is in the public interest.

As the legislative history of FOIA reveals, "It is critical that the phrase 'representative of the news media' be broadly interpreted if the act is to work as expected. . . . In fact, any person or organization which regularly publishes or disseminates information to the public . . . should qualify for waivers as a 'representative of the news media.'" 132 Cong. Rec. S14298 (daily ed. Sept. 30, 1986) (emphasis in original quotation); and 2) "A request by a reporter or other person affiliated with a newspaper, magazine, television or radio station, or other entity that is in the business of publishing or otherwise disseminating information to the public qualifies under this provision." 132 Cong. Rec. H9463 (Oct. 8, 1986) (emphasis in original quotation)). Therefore, in accordance with the Freedom of Information Act and relevant case law, I, Jason Leopold, should be considered a representative of the news media.

The Department of Justice provides a two-part test for determining whether a requestor is entitled to a waiver of fees. Records responsive to a request are to be furnished without charge if the requestor has demonstrated that "(i) Disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government, and (ii) Disclosure of the information is not primarily in the commercial interest of the requestor." 28 CFR 16.11(k). The DOJ regulations further require the consideration of the following factors in determining whether the requestor has met the first part of the test: the subject of the request; the informative value of the information to be disclosed; the contribution to an understanding of the subject by the public likely to result from disclosure; and the significance of the contribution to public understanding. 28 CFR 16.11(k)(2). To determine whether the second part of the test is met, the DOJ regulations require consideration of the following factors: the existence and magnitude of a commercial interest; and the primary interest in disclosure. As explained below, my request clearly meets this two-part test, and is also the type of request, and I am the type of requestor, for which courts have held that waiver of fees is required under FOIA.

I. DISCLOSURE OF THE REQUESTED RECORDS IS IN THE PUBLIC INTEREST BECAUSE IT IS LIKELY TO CONTRIBUTE SIGNIFICANTLY TO THE PUBLIC UNDERSTANDING OF THE OPERATIONS AND ACTIVITIES OF THE GOVERNMENT.

A. The subject of the requested records concerns the operations and activities of the FBI and broader government. The subject of the requested records concerns potential surveillance of a high-ranking foreign government official.

B. The disclosure is likely to contribute to an understanding of government operations and activities because the disclosable portions of the requested records will be meaningfully informative about those operations and activities. The vast majority of disclosable information is not already in the public domain, in either a duplicative or a substantially identical form, and therefore the disclosure would add substantial new information to the public's understanding of the FBI's role in monitoring the activities of North Korea.

The overwhelming preponderance of records I need to conduct my study are in the possession of the FBI and not in the public domain.

C.  The disclosure of the requested records will contribute to the increased understanding of a broad audience of persons interested in the subject, rather than merely my own individual understanding. Further, I will be collaborating with professionals who have great expertise in the subject area, and I have the ability and intention to effectively convey information to the public.

As explained herein in more detail, the audience likely to be interested in the subject is broad, and includes, historians of modern American government, politics, culture, and national security; journalists reporting on American politics, government, national security, and society; civil liberties attorneys; and the general public.

i) I firmly intend to analyze the requested records in order to facilitate significant expansion of public understanding of government operations. I am well qualified to perform this analysis.

As should be clear from the above, I have the ability and firm intention to disseminate to the public significant expansions of understanding of government operations based on my analysis of the requested disclosures.

ii) Additional Note on Journalistic Research and the Public Interest:

The case law on this matter is emphatically clear that journalistic inquiry alone satisfies the FOIPA public interest requirement. National Treasury Employees Union v. Griffin, 811 F.2d, 644, 649 (D.C. Cir. 1987).

Further, as articulated in the amendments to FOIA established by the OPEN Government Act of 2007, I solidly meet the applicable definition of  "a representative of the news media[.]" The OPEN Government Act of 2007 established that for FOIA purposes,

'a representative of the news media' means any person or entity that  gathers information of potential interest to the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience. 552(a)(4)(A)(ii)

Based on my completed and firmly intended research, analysis, and information dissemination activities detailed at length herein, I clearly satisfy this description.

Further, the OPEN Government Act of 2007's definition of "a representative of the news media" is taken nearly verbatim from language used by the United States Court of Appeals, District of Columbia Circuit in the court's 1989 FOIA fee waiver-oriented ruling in National Security Archive v. Department of Defense.  As the court also relatedly found in National Security Archive v. Department of Defense, a requester need not already have published numerous works in order to qualify as a representative of the news media. The court found that the express "intention" to publish or disseminate analysis of requested documents amply satisfies the above noted requirement for journalists to "publish or disseminat[e] information to the public." National Security Archive v. Department of Defense, 880 F.2d 1386, (D.C. Cir, 1989). I have expressed a firm intention to continue disseminating significant analysis of documents obtained through FOIPA requests. And I have demonstrated my ability to continue disseminating significant analysis of documents obtained through FOIPA requests.

Therefore, in that I am "person or entity that gathers information of potential interest to the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience," I solidly meet the applicable definition of "a representative of the news media." As such, I have again more than satisfied the requirement for a fee waiver.

D.  The disclosure of the requested records is likely to contribute "significantly" to public understanding of government operations and activities because disclosure would enhance to a significant extent the public's understanding of the subject in question as compared to the level of public understanding existing prior to the disclosure

i) See above Section I.

ii) As noted above, the overwhelming preponderance of records I need to conduct my study are in the possession of the FBI and not in the public domain.

II. DISCLOSURE OF THE INFORMATION IS NOT PRIMARILY IN MY COMMERCIAL INTEREST.

Any commercial interest that I have which would be furthered by the requested disclosure is de minimis.

I am requesting the release of records to analyze for use in the dissemination of news articles.  Though journalists do get paid for writing news articles, payment is not the primary purpose for which such work is conducted.  As the D.C. Circuit

explained in National Treasury Employees Union v. Griffin, 811 F.2d, 644, 649 (D.C. Cir. 1987), "While private interests clearly drive journalists (and journals) in their search for news, they advance those interests almost exclusively by dissemination of news, so that the public benefit from news distribution necessarily rises with any private benefit. Thus it is reasonable to presume that furnishing journalists with information will primarily benefit the general public[.]"

The disclosure of records will significantly benefit the public interest, and this benefit to the public is of vastly greater magnitude than my minimal commercial interest.

The disclosure of records will significantly benefit the public interest, and this benefit to the public is of vastly greater magnitude than my minimal commercial interest.

Additionally, the courts and the legislature have been deeply invested in ensuring that FOIPA duplication and search fees are not used by government agencies to deliberately or otherwise thwart legitimate scholarly and journalistic research:

This was made clear in Better Government Ass'n v. Department of State, in which the court ruled that, "The legislative history of the fee waiver provision reveals that it was added to FOIA 'in an attempt to prevent government agencies from using high fees to discourage certain types of requesters, and requests,' in particular those from journalists, scholars and nonprofit public interest groups." Better Government Ass'n v. Department of State, 780 F.2d 86, 89 (D.C. Cir. 1986).

This point is further elaborated in Ettlinger v. FBI,

The legislative history of the FOIA clearly indicates that Congress intended that the public interest standard for fee waivers embodied in 5 U.S.C. § 552(a)(4)(A) be liberally construed. In 1974, Congress added the fee waiver provision as an amendment to the FOIA in an attempt to prevent government agencies from using high fees to discourage certain types of requesters and requests. The 1974 Senate Report and the sources relied on in it make it clear that the public interest/benefit test was consistently associated with requests from journalists, scholars and non-profit public interest groups. There was a clear message from Congress that "this public-interest standard should be liberally construed by the agencies." The 1974 Conference Report, in which differences between the House and Senate amendments were ironed out, retained the Senate-originated public-interest fee waiver standard and further stated "the conferees intend that fees should not be used for the purpose of discouraging requests for information or as obstacles to disclosure of requested information." Further evidence of congressional intent regarding the granting of fee waivers comes from a 1980 Senate Subcommittee report. The report stated that "excessive fee charges . . . and refusal to waive fees in the public interest remain . . . 'toll gates' on the public access road to information." The report noted that "most agencies have also been too restrictive with regard to granting fee waivers for the indigent, news media, scholars . . ." and recommended that the Department of Justice develop guidelines to deal with these fee waiver problems. The report concluded: The guidelines should recommend that each agency authorize as part of its FOIA regulations fee waivers for the indigent, the news media, researchers, scholars, and non-profit public interest groups. The guidelines should note that the presumption should be that requesters in these categories are entitled to fee waivers, especially if the requesters will publish the information or otherwise make it available to the general public.

The court, in its Ettlinger v. FBI decision, continued that on 18 December 1980, a

policy statement was sent to the heads of all federal departments and agencies accompanied by a cover memorandum from then United States Attorney General Civiletti which stated that he had "concluded that the Federal Government often fails to grant fee waivers under the Freedom of Information Act when requesters have demonstrated that sufficient public interest exists to support such waivers." The Attorney General went on to state: Examples of requesters who should ordinarily receive consideration of partial fee waivers, at minimum, would be representatives of the news media or public interest organizations, and historical researchers. Such waivers should extend to both search and copying fees, and in appropriate cases, complete rather than partial waivers should be granted.

III. CONCLUSION.

As demonstrated above, the disclosure of the requested records will significantly contribute to expanded public understanding of government operations. I have the intent and ability to disseminate this significant expansion of public understanding of government operations. The public interest in this significant expansion of public understanding of government operations far outweighs any commercial interest of my own in the requested release. Accordingly, my fee waiver request amply satisfies the rules of 28 C.F.R. 16.11(k). Legislative history and judicial authority emphatically support this determination. For these reasons, and based upon their extensive elaboration above, I request a full waiver of fees be granted. I will appeal any denial of my request for a waiver of fees to the Department of Justice Office of Information Policy, and to the courts if necessary

\*\*\*

Please do not hesitate to contact me if you have any questions concerning this request.

Thank you. I appreciate your time and attention to this matter.